O. D. Bratton v. Commissioner.
Bratton v. Commissioner
Docket No. 41358.
United States Tax Court
1953 Tax Ct. Memo LEXIS 150; 12 T.C.M. (CCH) 747; T.C.M. (RIA) 53272; August 12, 1953
*150 Lowell W. Taylor, Esq., 950 Commerce Title Building, Memphis, Tenn., for the petitioner. A. Robert Doll, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax for 1948 and 1950 in the respective amounts of $2,792.94 and $5,211.10. The issues before us are (1) is petitioner entitled to a bad debt deduction of $3,500 in 1948 and $15,041.71 in 1950; and (2) has respondent erred in adding $1,291.56 to petitioner's income as an alleged capital gain for 1950. There is also a medical deduction in issue but this issue is dependent upon a mathematical determination based on our finding which will establish the ultimate income. Respondent waived all claims for deficiency based on the family partnership issue. Other adjustments in the deficiency notice are not contested by petitioner. Findings of Fact Petitioner and his wife, Dorothy Bratton, are residents of Memphis, Tennessee. They filed joint income tax returns for the years 1948 and 1950 with the collector of internal revenue for the first district of Tennessee. Petitioner has been engaged in the lumber business, in one form or another, *151 all of his life. In 1948 and 1950, and prior thereto, he owned an interest in various partnerships and corporations engaged in the lumber business or related industry. He was also engaged in the business of buying mills, operating them awhile and then selling them. As an integral part of his business he guaranteed to banks and other creditors the indebtedness of the businesses in which he was interested. In 1948 and 1950, in his income tax returns, he reported salary from one company and partnership income from four others. In these years he also reported the business bad debt deductions here in dispute, based upon his transactions with Stable Wood Products, Inc., hereinafter called the Corporation. The Corporation was organized under the laws of Tennessee on November 22, 1946, for the purpose of manufacturing prefabricated garages, but due to a lack of demand for its product some time later it turned to the making of soft drink boxes. Its original stockholders, each owning 10 shares, were: N. O. Chambers, E. L. Betz (petitioner's son-in-law), O. D. Bratton (petitioner) and Hozea Longwell. Petitioner was president and chairman of its board of directors continuously from its organization *152 throughout the year 1950, and he controlled its management and operation throughout that period. The lumbermen dealing with the Corporation considered they were dealing with petitioner, since he held himself out as standing behind the debts of the Corporation. The bank with which the Corporation did business made loans to it on the strength of signed invoices and petitioner's endorsement. The Corporation never had a credit rating sufficient to obtain goods on credit, and petitioner guaranteed payment of its accounts almost from the beginning. The business of the Corporation was not successful and it sustained operating losses for each of the years 1947 through 1950. Its books indicated an earned surplus deficit of $8,797.21 as of December 31, 1947, and as of December 31, 1948, its accumulated surplus deficit and operating loss was $31,358, and as of December 31, 1949, this accumulated deficit was $49,072.06, and as of December 31, 1950, the accumulated deficit was $86,502.73. As of December 31, 1948, the Corporation was insolvent and claims against it were uncollectible and of no value, and this was also true throughout the years 1949 and 1950. In 1949 the financial condition *153 of the Corporation had grown so bad that all of its stockholders except E. L. Betz, petitioner's son-in-law, transferred all of their stock therein to petitioner, without consideration other than his payment of its debts. In October 1950 petitioner induced H. L. Judd, who had had some experience in the manufacture of soft drink boxes, to take over the management of the Corporation by selling him one-third of petitioner's stock in the Corporation for $1.00 and petitioner's agreement that he would make no further claim against the Corporation for the amounts that he had loaned and advanced for the Corporation. Judd regarded the stock as having no value, but he was hopeful that a change of management and of the product manufactured might convert the business to a going concern. During the years 1947 and 1948, petitioner loaned or advanced to the Corporation an aggregate sum of $3,500 with which to pay, and which was paid by the Corporation to, its creditors, payment of whose accounts petitioner had theretofore guaranteed. Petitioner was not repaid for any of same. Thereafter, on or about December 31, 1948, due to the financial condition of the Corporation, petitioner determined that *154 the $3,500 was uncollectible and charged same off as a bad debt, and in his 1948 income tax return claimed deduction therefor, which was disallowed by the Commissioner. The sole ground for the disallowance, as stated in the notice of deficiency, was that petitioner "had not shown that this debt became worthless in the taxable year". In 1949 and 1950 the Corporation incurred other and additional indebtedness, the payment of which petitioner also guaranteed. In 1949, at the request of some of the larger corporate creditors, petitioner paid them one-third of the amounts due them by the Corporation and gave his personal notes for the remaining two-thirds. In 1950 petitioner paid to the Corporation's creditors, on debts which in 1949 and 1950 he had guaranteed payment, an aggregate of $15,041.71, and thereafter, on or about December 31, 1950, petitioner determined that same was uncollectible and in his income tax return for 1950 claimed a deduction as a bad debt in the sum of $11,480.14 [1], which was disallowed by the Commissioner on the sole ground that petitioner had not "shown that this debt became worthless in 1950". *155 Petitioner had an excellent credit rating which would have been destroyed if he had refused payment of the Corporation's debts guaranteed by him. Petitioner's advances to the Corporation, aggregating $3,500, made in 1947 and 1948 and claimed as a deduction in his 1948 income tax return, were made with the expectation that same would be repaid, and after such advances were made and in the year 1948 same became worthless. The advances made in 1949 and 1950 by petitioner, aggregating $15,041.71, were worthless, both when made and also when petitioner guaranteed the payment of same, and petitioner could not have reasonably expected the repayment thereof. The stock of the Corporation which petitioner sold to Judd for $1.00 in 1950 he acquired in 1947 at a cost of $8,700, and he thereby sustained a long-term capital loss in this transaction of $8,699. In the year 1950 petitioner, in another transaction, realized a capital gain of $758.11. Petitioner in his income tax return for 1950 reported both of these transactions, offsetting one against the other, thereby reflecting a net capital loss of $7,940.89, of which 50 per cent was $3,970.45, and he claimed $1,000 deduction as a capital *156 loss, that being the maximum amount allowable under the statute. The Commissioner in his notice of deficiency disallowed the $1,000 capital loss deduction, and determined that petitioner had no capital loss, but had a net capital gain of $291.50, and accordingly increased petitioner's taxable income as reported for 1950 in the amount of $1,291.56. Opinion [2]
The first issue in dispute is whether petitioner is entitled to his claimed bad debt -3 deduction of $3,500 in 1948 and $15,041.71 in 1950, both of which are based upon payments and advances by him to and on behalf of Stable Wood Products, Inc., herein called the Corporation. Respondent, in support of his disallowance, contends (1) that the amounts in question were not deductible since they were not debts, but "capital contributions" to the Corporation, and (2) in the alternative, if debts, they were not deductible because: (a) they did not "become worthless in the taxable years" and *157 (b) they were "non-business bad debts". As to (1), that the sums in question were contributions to capital and not debts, we can not agree. We think a careful review and consideration of the evidence as a whole refutes this suggestion. We have examined the authorities cited by respondent and we find that they all agree, as was said in , that: "This question is one of fact * * * and in deciding whether or not a debtor-creditor relation resulted from advances, th parties' true intent is relevant * * *." The facts of no two cases are exactly alike and both parties can frequently cull some facts from the same case which tend to support their respective adverse positions. We shall not therefore undertake a comparison of the facts here with those of any of the cases cited. We deem it sufficient to say that the evidence as a whole convinces us that "a debtor-creditor relation resulted from the advances" and that such was the "true intent". Respondent errs in his contention that the unqualified "expectation of repayment" is essential to the creation of a debt. Parties making loans may at the time entertain doubt as to the repayment, but this does *158 not of itself transform the transaction from a debt to a gift or a contribution. A lender is not necessarily a give because he entertains doubt as to the debtor's ability to repay. The character of the transaction is determined by the relation of the parties to it and the motive actuating same. The petitioner did testify that when he made some of the payments in question he was doubtful of their repayment to him by the Corporation because it would have to depend upon earnings with which to repay same, and the Corporation's business was off to a slow start. There was no question that the Corporation owed him these amounts. Doubt as to their collectability did not make them contributions rather than loans. The evidence we think clearly shows, especially as to the $3,500 for which deductions were claimed in 1948, that they were not contributions to the capital of the Corporation, but debts due petitioner by the Corporation. They were made in payment of the Corporation's debts which petitioner had theretofore personally guaranteed to the creditors when the credit was extended. These payments were not a contribution to capital, they did not increase the Corporation's capital or lessen *159 its liabilities. It still owed the same amount, except petitioner was substituted for the creditors whose claims he had paid. Concerning respondent's 2(a), that if the amounts in question were debts, they did not become worthless in the taxable years, we think this is true as to 1950, but not as to 1948. As to the $3,500 deduction for 1948, which included advances made by petitioner to the Corporation in 1947 and 1948, we have found as an ultimate fact that same became worthless in 1948, and as to this deduction petitioner is sustained. Concerning the $15,041.71 deduction for 1950, the respondent is sustained. The Corporation had already become insolvent prior to 1950 and was continuously insolvent from December 31, 1948, throughout 1950 and hence debts incurred in that year, or subsequent to December 31, 1948, could not become worthless in 1950, since they were worthless when acquired. It is well settled that debts may not be deducted as bad debts unless they had value when acquired or created. ; ; . Petitioner had himself considered the 1947-1948 advances *160 as worthless on December 31, 1948, and had so treated them in his tax return for that year. Despite this action and the further fact that the condition of the Corporation grew worse, he continued to make advances to it. It seems obvious that petitioner had no hope of recovering the amounts he advanced or pledged after December 31, 1948. We do not agree with respondent's 2(b), that these losses were nonbusiness bad debts. They were incurred directly from the operation of the business in which petitioner was regularly engaged, and also were proximately related to and connected therewith. . The Corporation to which the loans were made was owned, managed and operated by petitioner and was directly connected with some four or five other business entities organized and operated by petitioner, to each of which he made loans and advancements and guaranteed the payment of indebtedness incurred by them. These various businesses were all connected with and related to and were a part of the lumber business in which petitioner was engaged. The facts here on this issue are quite similar to those in , *161 where in a unanimous Court reviewed opinion we held the amounts to be business debts. Respondent cites , which reversed our holding in . However, in that case application for certiorari is now pending, and furthermore, we think the facts here are stronger for the taxpayer than those in the Smith case. On the other hand we hold that petitioner in 1950 was entitled to the capital loss as claimed, and that respondent erred in increasing petitioner's net income for that year in the amount of $1,291.56. Decision will be entered under Rule 50. Footnotes
1. The balance of $3,561.57 was not deducted in his income tax return through inadvertence, but was included in his amended petition.↩
2. In our Memorandum Findings of Fact and Opinion, entered herein on June 30, 1953, we failed to consider all of respondent's contentions in support of his disallowance, and accordingly, on July 28, 1953, we vacated and withdrew same.↩